52 F.3d 326
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Joyce RAMOS, Defendant-Appellant.
 No. 94-1667.
 United States Court of Appeals, Sixth Circuit.
 April 17, 1995.
 
 Before: KENNEDY, KRUPANSKY, and NORRIS, Circuit Judges.
 OPINION
 PER CURIAM.
 
 
 1
 Defendant Joyce Ramos entered into a plea agreement with the United States in which she admitted conspiring to traffick in drugs, namely, heroin and cocaine. On appeal, she seeks to withdraw her plea and also attacks the calculation of her sentence. We find no merit in either position and therefore affirm her conviction and sentence.
 
 I.
 
 2
 A nine-count indictment charged Ramos and ten others with participating in a large-scale drug-trafficking operation in Detroit from November 1, 1988 until August 1, 1991. Shortly before her trial was to begin, defendant entered into a plea agreement with respect to the first count of the indictment, which charged a violation of 21 U.S.C. Sec. 846. The agreement caps defendant's potential incarceration at 293 months, entitles her to a two-level reduction for acceptance of responsibility "unless the government learns of new information to the contrary," and specifies that the government will request a downward departure if defendant "provide[s] truthful and complete information ..., including a full debriefing." Should a downward departure be warranted, the government indicated that it would ask the court to limit her sentence to 180 months. However, the agreement also contains a caveat: "If defendant fails to keep any promise in this agreement (including any promise to cooperate) the government is relieved of any obligation not to prosecute."
 
 
 3
 The government attempted to debrief defendant prior to sentencing. However, she had left the jurisdiction. She also failed to keep an appointment with her pretrial officer as she was required to do under the terms of her bond, and did not appear at her scheduled sentencing hearing.
 
 
 4
 On March 11, 1994, defendant and a coconspirator, who had also fled the jurisdiction, were arrested in Austin, Texas. At the time of arrest, defendant had assumed a new identity.
 
 
 5
 After her return to Michigan, defendant, through a motion filed by her attorney, attempted to have the government debrief her so that she could qualify under the terms of the plea agreement for a downward departure. Prior to the filing of this motion, the government had indicated by letter that it would "not be filing a 5K1 Motion for Departure as your client missed all appointments for debriefings and then jumped bond."
 
 
 6
 After the district court denied the motion for specific performance of the plea agreement, defendant attempted to withdraw her guilty plea. The district court refused to permit her to do so and sentenced defendant to a term of imprisonment of 293 months followed by five years of supervised release.
 
 II.
 1. Specific Performance
 
 7
 We first consider whether the district court committed reversible error in denying defendant's motion for specific performance of the plea agreement.
 
 
 8
 As noted by the district court, the government's refusal to move for a downward departure pursuant to Sec. 5K1.1 of the United States Sentencing Guidelines is only reviewable if the refusal was based on an unconstitutional motive. Wade v. United States, 504 U.S. 181 (1992); United States v. Bagnoli, 7 F.3d 90, 92 (6th Cir.1993), cert. denied, 115 S.Ct. 95 (1994). No such unconstitutional motive existed in this case; rather, defendant breached the explicit terms of the plea agreement by fleeing the jurisdiction. In our view, it makes no sense to order the government to debrief defendant if a subsequent decision not to move for downward departure is essentially unreviewable.
 
 
 9
 Accordingly, we affirm the denial of defendant's motion for specific performance.
 
 2. Withdrawal of Plea Agreement
 
 10
 Federal Rule of Criminal Procedure 32(d) provides that the "court may permit withdrawal of the plea [before sentencing] upon a showing by the defendant of any fair and just reason." The district court's decision is reviewed for abuse of discretion. United States v. Spencer, 836 F.2d 236, 238 (6th Cir.1987).
 
 
 11
 This circuit has frequently reiterated several factors that a court should consider when assessing whether a motion to withdraw a plea is "fair and just." They include: 1) the time that has elapsed between the plea and motion to withdraw; 2) the reason for any delay in the request to withdraw; 3) whether the defendant maintains his innocence; 4) the circumstances of the plea; 5) defendant's background and familiarity with the criminal justice system; and 6) prejudice to the government. United States v. Bashara, 27 F.3d 1174, 1181 (6th Cir.1994) (citing cases), cert. denied, 115 S.Ct. 909 (1995).
 
 
 12
 In this instance, defendant points to a number of respects in which she feels that her plea was defective. First, she contends that the court failed to explain the nature of the charges against her during the plea hearing. Before accepting a plea, the judge must make certain that the accused understands the charges and consequences of a plea. McCarthy v. United States, 394 U.S. 459, 465-66 (1969); Fed.R.Crim.P. 11(c)(1). Although it is important that the trial court ensure that a defendant understand the charges, particularly when conspiracy is at issue, see, e.g., United States v. Bruce, 976 F.2d 552, 560 (9th Cir.1992), we look to the totality of the circumstances to determine whether this occurred. United States v. LeDonne, 21 F.3d 1418, 1423 (7th Cir.), cert. denied, 115 S.Ct. 584 (1994).
 
 
 13
 Our review of the record reveals that Ramos was satisfied that her attorney had "fully explained ... the situation ... and all [the] alternatives." She also failed to file objections to the presentence report, which explicitly stated that the plea agreement was for conspiracy. Furthermore, during the plea hearing, the government, at the request of the court, described the nature of the illegal activity in these terms:
 
 
 14
 [F]rom on or about November 1st, 1988 through July of 1991 that Defendant Joyce Ramos was involved in the distribution of heroin and, to a much lesser extent, cocaine in the Detroit area, and that this was done through individuals named in the indictment, such as Robert Esquible and Linda Quiroz, who worked on alternate days distributing heroin through runners, such as Donnie Denardo and Jim Lombardo, et cetera, to individuals in the Detroit area.
 
 
 15
 While the word "conspiracy" is not explicitly mentioned, this description, when coupled with the indictment, plea agreement, and discussions with her counsel, satisfies us that defendant was adequately apprised of the charge leveled against her.
 
 
 16
 Because defendant's acceptance of the plea agreement was knowing and voluntary, we affirm the denial of her motion to withdraw her plea.
 
 3. Sentencing Calculation
 
 17
 a. Leadership role
 
 
 18
 The district court enhanced defendant's sentence by four levels pursuant to U.S.S.G. Sec. 3B1.1(a) because it concluded that she had been an organizer or leader in a criminal activity involving five or more participants. On appeal, defendant contends that the government did not establish this fact by a preponderance of the evidence.
 
 
 19
 We review the district court's decision on this issue for clear error. United States v. Bashara, 27 F.3d at 1182. In this case, the testimony in the record amply supports the district court's conclusion.[1]
 
 
 20
 b. Quantity calculation
 
 
 21
 The worksheets attached to the plea agreement stipulate that the conspiracy involved between ten and thirty kilograms of heroin. The presentence report concludes that twelve kilograms were at issue when "seen in a light most favorable for the defendant."
 
 
 22
 A district court may look to both the presentence report and any factual stipulations incorporated into a plea agreement when determining the appropriate sentence. United States v. Kemper, 908 F.2d 33, 37 (6th Cir.1990). Furthermore, its factual determination is subject to review for clear error. United States v. Baro, 15 F.3d 563, 568 (6th Cir.), cert. denied, 115 S.Ct. 285 (1994).
 
 
 23
 The district court heard testimony concerning the amount of drugs involved in the conspiracy and concluded that an average of a half ounce[2] per day was sold over a period of nine hundred days, resulting in a total of approximately eleven kilograms. This figure is consistent with the presentence report and within the range of the amount stipulated on the worksheets attached to the plea agreement. Our review of the record also supports such a conclusion.
 
 
 24
 Accordingly, the district court's factual finding with respect to the quantity of drugs involved in the conspiracy is affirmed.
 
 III.
 
 25
 For the foregoing reasons, the conviction and sentence are hereby affirmed.
 
 
 
 [1]
 Moreover, the defendant stipulated to such an enhancement as part of the plea agreement
 
 
 [2]
 In fact, the court calculated using "Mexican" half ounces, which are only 12.5 grams as opposed to 14.75 grams