65 F.3d 169
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Roger Lee SEXTON, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 94-5611.
 United States Court of Appeals, Sixth Circuit.
 Sept. 1, 1995.
 
 Before: JONES, GUY, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Roger Lee Sexton moves to vacate his sentence, pursuant to 28 U.S.C. Sec. 2255. Sexton claims that one of his six lawyers was not licensed to practice law, and that this fact warrants voiding his guilty plea. He also claims that his guilty plea should be rescinded because the district court failed to comply fully with Fed.R.Crim.P. 11. Finding his claims to be without merit, we affirm the judgment of the district court.
 
 
 2
 * After the FBI and Kentucky State Police suspected that Sexton was involved in drug trafficking, they caused an informant to approach Sexton about purchasing a large supply of weapons, with the goal of making a controlled buy. While wearing a wire, the informant went to Sexton's home on August 17, 1988, to discuss a weapons transaction. Sexton brought up cocaine, and the informant mentioned that he had a friend who was looking to buy some. They agreed that Sexton would sell him small quantities of cocaine, with the hope of future business. At this meeting, Sexton gave the informant an ounce of 92%-pure cocaine as partial payment for some electronics equipment.
 
 
 3
 On September 23, 1988, Sexton called the informant to ask him to install some television equipment. The informant went to Sexton's home, did the work, and arranged to buy more cocaine. The next day, he returned and the two exchanged cash and cocaine, and the informant observed a pistol in Sexton's pocket. Sexton called the informant on September 26, and they met at the informant's workplace, where Sexton said that if he was being set up, he would kill the informant and his family.
 
 
 4
 Sexton then insisted that the informant do something illegal to dispel Sexton's fears. They decided that the informant would furnish Sexton with automatic weapons in exchange for a kilogram of cocaine. Three days later, Sexton came to the informant's business and the informant gave him six fully automatic 9-mm guns and a fully automatic 9-mm Uzi pistol with accompanying silencer. Once the informant transferred the weapons to Sexton, he was arrested. A boat that Sexton had been driving near the rendezvous point was seized, and police found twenty-seven grams of 95-97%-pure cocaine. Sexton's residence also was searched, revealing seven firearms and 13,600 rounds of ammunition. Another six weapons and 1,085 rounds of ammunition were found during a later search of Sexton's houseboat.
 
 
 5
 Sexton was indicted on October 17, 1988, for nine counts of drug and weapon charges. Dissatisfied with his first attorney, Sexton replaced him on November 28, 1988, with Frank Haddad, Dan Schwartz, and George Salem. Ten days later, this new defense team filed eleven motions. Robert Flynn, Paul Riley, and Ronald Von Neumann were added as co-counsel on April 21, 1989. Three more defense motions were filed on June 5.
 
 
 6
 After several reschedulings, the trial was continued to March 5, 1990, in order for the parties to negotiate a plea bargain. On that date, Sexton pleaded guilty to Counts 3 through 5, possession of cocaine with intent to distribute, and Counts 7 through 9, the use of a firearm during a drug trafficking offense, possession of unregistered firearm, and intimidating or threatening an informant. As part of the plea agreement, the United States dropped Counts 1, 2, and 6 of the indictment. The sentencing court found that there was a factual basis for the plea, and after questioning Sexton about his decision, accepted his guilty plea.
 
 
 7
 Sexton was sentenced on May 24, 1990, with all six of his attorneys present, none of whom objected to the pre-sentence report. Sexton agreed to a five-year consecutive sentence on Count 7, in exchange for certain concessions by the United States. The parties stipulated that Sexton would be sentenced on Counts 3, 4, and 5 based on thirty grams of cocaine. The United States agreed not to seek an upward adjustment for obstruction of justice, based on Sexton's threat to kill the informant's family. The prosecution's dismissal of Counts 1 and 2 of the indictment made an upward adjustment for a major role in the offense very unlikely. Sexton received seventy months on Counts 3, 4, 5, 8, and 9, and sixty months on Count 7, to be served consecutively. Sexton did not appeal his sentence.
 
 
 8
 On November 23, 1992, Sexton moved to set aside the guilty plea, pursuant to 28 U.S.C. Sec. 2255. A magistrate judge held an evidentiary hearing to evaluate Sexton's claim of ineffective assistance of counsel, and subsequently filed a report and recommendation rejecting Sexton's contentions. The district court adopted the magistrate judge's report in full.
 
 
 9
 Sexton argues that he did not have effective assistance of counsel because one of his six attorneys, Von Neumann, was not licensed to practice law when he represented Sexton and that this fact tainted Sexton's subsequent guilty plea. Sexton also claims that the district court failed to comply with Fed.R.Crim.P. 11(c)(1) by not ensuring that he understood the nature of the charges against him, and that there was not a sufficient factual basis to support Sexton's guilt on Count 7, in violation of Fed.R.Crim.P. 11(f).
 
 II
 
 10
 To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the "cause and prejudice" standard of Strickland v. Washington, 466 U.S. 668, 687 (1984), which requires: 1) a showing that counsel was deficient; and 2) that but for the incompetent counsel, there is a "reasonable probability" or "substantial likelihood" that the result of the proceeding would have been different.[1]
 
 
 11
 The district court concluded that Sexton could not satisfy either part of the Strickland test for several reasons. First, the court found, based on an affidavit from the Director of Admissions for the District of Columbia Bar, that Von Neumann was indeed a member in good standing of that body, and that Sexton had offered no evidence to the contrary. Second, Von Neumann played only a minor role in Sexton's defense, primarily that of an investigator. Last, there was no prejudice because the evidence of Sexton's guilt was overwhelming, based on an informant's testimony, recordings of drug transactions, and the seized cocaine and weapons.
 
 
 12
 Therefore, Sexton's claim hinges on Solina v. United States, 709 F.2d 160 (2d Cir.1983), where the Second Circuit adopted a per se rule that representation by an unlicensed attorney violates the accused's Sixth Amendment right to counsel. In Solina, a defendant's attorney had twice failed to pass the New York bar. Even though there was no evidence of actual prejudice to the defendant or a lack of competence on the attorney's part, and there was overwhelming evidence of guilt, the court ordered a new trial. Id. at 168. However, the Solina holding is much less persuasive here, where a defendant is represented by a team of six attorneys. Additionally, no other courts have followed the Second Circuit's lead, and some have expressed their disagreement with an absolute per se rule. See United States v. Stevens, 978 F.2d 565, 566-68 (10th Cir.1992) (declining to follow Solina where a attorney was disbarred seven days before trial without his or the defendant's knowledge); United States v. Mouzin, 785 F.2d 682, 696-98 (9th Cir.), cert. denied, 479 U.S. 985 (1986).
 
 
 13
 In this case, we need not evaluate the wisdom of adopting this per se rule because Sexton has not carried his burden of showing that Von Neumann lacks a license to practice law. At the evidentiary hearing, Von Neumann testified that he received his law degree in 1962 from the University of Pennsylvania, that he was admitted to the Florida bar in 1972, and then admitted to the District of Columbia bar in 1987. In contrast, an affidavit from the Florida Bar Association stated that it had no record of a "Ronald Carl Von Neuman"[2] ever being a member. However, the District of Columbia bar records indicate that Von Neumann was admitted on June 8, 1971, and remained an active member in good standing until at least 1994. Sexton merely speculates that "it appears that Von Neumann's admission to practice in the District of Columbia was reciprocal based on his alleged admission to practice law in Florida," so that the former is flawed by his lack of Florida certification. Sexton's Brief at 9. Sexton has offered no support for this inference, one which can be researched easily, so we accept as uncontroverted that Von Neumann was licensed to practice law at the time he represented Sexton.[3]
 
 III
 
 14
 Rule 11(c) of the Federal Rules of Criminal Procedure provides, in relevant part:
 
 
 15
 (c) Advice to Defendant. Before accepting a plea of guilty ... the court must address the defendant personally and in open court and inform the defendant of, and determine that the defendant understands, the following:
 
 
 16
 (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty ... the fact that the court is required to consider any applicable sentencing guidelines but may depart from [them] under some circumstances ...; and
 
 
 17
 ............................................................
 
 
 18
 ....................
 
 
 19
 * * *
 
 
 20
 (3) that the defendant has a right to plead not guilty ... the right to be tried by a jury ... the right to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination; and
 
 
 21
 (4) that if a plea of guilty or nolo contendere is accepted by the court ... the defendant waives the right to a trial....
 
 
 22
 Originally, courts were required to comply strictly with the mandates of Fed.R.Crim.P. 11(c)(1), and vacation of the plea was the penalty for any deviation. McCarthy v. United States, 394 U.S. 459 (1969). In 1983, Congress incorporated the harmless error rule into Rule 11, and this circuit has since employed a "substantial compliance" test, vacating a defendant's plea only where the court's failure has affected the defendant's substantial rights. United States v. Bashara, 27 F.3d 1174, 1178-79 (6th Cir.1994), cert. denied, 115 S.Ct. 909 (1995); United States v. Syal, 963 F.2d 900, 904 (6th Cir.1992). This standard applies to both direct and collateral attacks on a sentence. United States v. Stead, 746 F.2d 355, 356-57 (6th Cir.1984), cert. denied, 470 U.S. 1030 (1985).
 
 
 23
 The record clearly reflects that Sexton was informed fully of the rights he was waiving by pleading guilty, the offenses he was pleading guilty to, and the elements of those offenses. At the change of plea hearing, Judge Meredith first checked to be sure Sexton was competent. Transcript of Change of Plea at 4-5. The court then asked whether Sexton had been able to consult with his attorneys concerning the proposed plea agreement, and if Sexton was satisfied with their advice and counsel.[4] The district court inquired if Sexton knew he was waiving his rights to a jury trial, to subpoena and cross-examine witnesses, and to testify on his own behalf, and that a guilty plea waived his right against self-incrimination. The court then recited each count that Sexton was pleading guilty to, stating the appropriate United States Code section and the necessary elements and mental state required. The court explained that the maximum sentence that Sexton could receive was 105 years of imprisonment and a $1.5 million fine. The court then asked whether Sexton had been coerced, if the plea was voluntary, and stated that Sexton could appeal under certain circumstances. The court next allowed the United States to state the facts it would use at trial against Sexton, in the event that a trial was necessary.[5] Finally, the court asked Sexton if he wished to plead guilty and acknowledge his guilt, and Sexton did so.
 
 
 24
 Apparently this judicial inquiry was not enough for Sexton, who now claims that "the Court completely failed to inquire if Appellant understood the nature of the charges." Sexton's Brief at 26. It is difficult to imagine how a judge could better insure that a guilty plea was knowing and voluntary. Essentially, Sexton's complaint is that the judge did not explicitly use the exact words "do you understand the nature of the charges?" As Justice (then Judge) Cardozo noted in a different context: "The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal." Wood v. Lucy, 118 N.E.2d 214 (N.Y.App.1917). Accepting Sexton's position would reduce Rule 11 to an empty formalism instead of a thorough and probing examination of the circumstances of a defendant's plea. Accordingly, we hold that the district court carefully "determine[d] that the defendant underst[ood]" the information that Rule 11 guarantees.
 
 IV
 
 25
 Sexton contends that "there was not a sufficient factual basis presented to the district court to justify the court's finding of guilt" on Count 7, the use of a firearm during and in relation to a drug trafficking crime. Sexton concedes that the standard of review concerning questions of sufficiency of the evidence is narrow. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Indeed, even "circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not 'remove every reasonable hypothesis except that of guilt.' " United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989), quoting United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984).
 
 
 26
 However, Sexton mischaracterizes his argument by couching it as a sufficiency of the evidence issue. A court cannot assess the sufficiency of the evidence where neither the prosecution nor the defendant presents their version of events. Hence, a defendant cannot challenge the sufficiency of the evidence when he pleads guilty because Sexton accepted the facts as set out in the plea. United States v. Manni, 810 F.2d 80, 84 (6th Cir.1986), citing United States v. Freed, 688 F.2d 24, 25 (6th Cir.1982).
 
 
 27
 Moreover, even if a court reviewed the matter on the merits, Sexton's conviction would stand because Sexton admitted the factual basis for Count 7. At the change of plea hearing, the court asked the prosecuting attorney, Mr. Taft, to summarize the proof to be used against Sexton. Taft stated in pertinent part:
 
 
 28
 With respect to count 7 of the indictment, that is the 924(c) violation, in connection with the second transaction that I described, two ounces of cocaine was delivered to Mr. Davis by Mr. Sexton, or persons acting in his behalf, that Mr. Sexton was in possession of a hand-held firearm.... I believe that Mr. Sexton, proof would be during the course of the trial Mr. Sexton actually handed this firearm to Mr. Davis. It will be the position of the United States that was to enforce the threatening aspect that he had a firearm, this was all done in connection with other statements that Mr. Sexton has made that he was never out of reach of a firearm. And I believe that would constitute a use of a firearm for purposes of the 924(c) violation.
 
 
 29
 Following this description by the United States, the court asked, "Mr. Sexton, you have heard the summary by the United States Attorney. And do you agree with what the prosecutor said?" After conferring with Sexton, his lawyer stated:
 
 
 30
 MR. HADDAD: Defendant wishes to advise the court ... that he agrees in substance with the basis of the offense as stated by Mr. Taft. There were certain details that Mr. Taft recited insofar as these recording and things were concerned ... but in substance he agrees with the basis for the plea as outlined by Mr. Taft. Is that correct sir?
 
 
 31
 BY DEFENDANT: Yes, sir.
 
 
 32
 It is evident from this colloquy that Sexton was aware of and admitted the facts underlying Count 7. Moreover, he received a substantial reduction in his sentence as a result of the government's concessions and stipulations pursuant to the plea bargain. Sexton cannot be heard now to claim that there was no factual basis for the conviction.
 
 V
 
 33
 Because Sexton has neither shown that one of his attorneys rendered ineffective assistance nor that the district court erred in fulfilling its duty under Fed.R.Crim.P. 11, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 The Supreme Court clarified the prejudice half of the Strickland standard in Lockhart v. Fretwell, explaining that "an analysis focussing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or reliable, is defective." 113 S.Ct. 838, 842 (1993). Thus, even if Sexton could show that a different outcome was likely, he would still be required to go further and show that the result, the court's acceptance of his guilty plea, was made unfair or unreliable by Von Neumann's lack of a license to practice law. See id. at 843; Nix v. Whiteside, 475 U.S. 157, 175 (1986)
 
 
 [2]
 The affidavit referred to a "Von Neuman," and it is unclear whether the difference in spelling is of any significance
 
 
 [3]
 Von Neumann's error in stating to the court when he was first admitted to the District of Columbia bar is troubling, and neither party has attempted to explain the mistake, but this discrepancy alone is insufficient for us to assume that he is unlicensed and does not justify vacating Sexton's plea
 
 
 [4]
 When asked by the court if he had discussed his rights with Sexton, Frank Haddad, petitioner's spokesman at the hearing, replied "Yes, I have ... [a]nd I might also add that he has had the benefit of a number of attorneys, all of whom are in the courtroom today...."
 
 
 [5]
 Sexton's only objection involved certain details concerning the government's recordings of the transactions, but "in substance he agree[d] with the basis for the plea as outlined by [the Assistant United States Attorney]."