NOT RECOMMENDED FOR PUBLICATION
File Name: 10a0362n.06

No. 09-3347

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jun 11, 2010**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,                    )
                                             )
    Plaintiff-Appellee,                      )
                                             )       ON APPEAL FROM THE UNITED
v.                                           )       STATES DISTRICT COURT FOR THE
                                             )       NORTHERN DISTRICT OF OHIO
KEVEN McINTYRE,                              )
                                             )
    Defendant-Appellant.                     )       OPINION
_____      )

**Before:  GILMAN and WHITE, Circuit Judges; and THAPAR, District Judge.***

**RONALD LEE GILMAN, Circuit Judge.**  Pursuant to a plea agreement, Keven McIntyre

pled guilty to one count of possession of child pornography.  He moved to withdraw his plea 51 days

later, which the district court denied.  McIntyre was then sentenced to 240 months of imprisonment,

the statutory maximum for his crime.  He now appeals, contesting both his sentence and the district

court's denial of his motion to withdraw his guilty plea.  For the reasons set forth below, we

**AFFIRM** the denial of McIntyre's motion to withdraw his guilty plea and **DISMISS** the remainder

of this appeal pursuant to the appellate-waiver provision in the plea agreement.

## I.  BACKGROUND

Several federal and state law-enforcement officers executed an arrest warrant for McIntyre

at his apartment in Toledo, Ohio on February 1, 2008.  After McIntyre was arrested, he gave the

---

*The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

officers permission to search the apartment and admitted that his personal computer contained dozens of images of child pornography, which the officers later verified. McIntyre was subsequently charged with one count of possession of child pornography, specifically the possession of a computer that contained digital images of child pornography that had been shipped and transported in interstate commerce.

Roughly five months later, the government issued a superseding indictment charging McIntyre with two counts of receiving child pornography and one count of possession of child pornography. After several weeks of deliberation, McIntyre agreed to plead guilty. The plea agreement called for the government to drop two of the three charges in the superseding indictment and agree to a reduction under the U.S. Sentencing Guidelines for McIntyre's acceptance of responsibility. In exchange, McIntyre agreed to plead guilty to the third charge in the superseding indictment and to waive his right to appeal his sentence, with some limited exceptions not applicable here. The parties reached this agreement after the plea-agreement deadline set by the district court had passed, but the court accepted it nonetheless.

As McIntyre's trial counsel explained at the change-of-plea hearing, he and McIntyre had "many, many, many conversations" about the case. In the days before the parties reached the plea agreement, McIntyre and his attorney had two extended meetings with Wayne Marney, a forensic computer expert who conducted an "investigation/review" of McIntyre's computer on which the child pornography had been found. McIntyre had apparently doubted that the child pornography on his computer was shipped or transported in interstate commerce. He and his counsel therefore hired Marney to evaluate whether the images of child pornography stored on his computer could be so

linked.

McIntyre's counsel explained that McIntyre, who has a background in computers, spoke directly with Marney at these meetings "about the state of the evidence." Based on his discussions with Marney—which apparently satisfied McIntyre that the government could in fact link the child pornography on his computer to interstate commerce—McIntyre decided to plead guilty. McIntyre agreed at the change-of-plea hearing that his "willingness to plead guilty [was] the result of talks [he had] with [his] lawyer and others," and he "[a]bsolutely" agreed that the government had evidence showing that the child pornography found in his possession had been shipped or transported in interstate commerce.

During the plea hearing, the district court explained to McIntyre that the statutory maximum sentence in his case was 240 months of imprisonment. The court also verified that McIntyre understood that the plea agreement contained "a provision which generally waives your right to an appeal, including an appeal of [the] sentence with limited exceptions," and that McIntyre was willing to abide by that part of the agreement. In addition, the court specified that the plea agreement did not contain a particular recommendation as to McIntyre's sentence, and that both parties were free to argue for a sentence outside the advisory Sentencing Guidelines range. McIntyre entered a plea of guilty despite receiving these admonishments, which the court accepted.

Fifty-one days later, McIntyre moved to withdraw his guilty plea. His motion stated that at his first meeting with his defense counsel after the plea hearing (which did not occur until several weeks had passed), he indicated a desire to withdraw his plea. McIntyre alleged that after further reviewing the applicable law and reflecting on his prior discussions with Marney, he believed that

he was legally innocent. His counsel also indicated that McIntyre's decision to plead guilty may have been hurried because it was made after the district court's plea-agreement deadline. Finally, McIntyre argued that the government would not be prejudiced by the withdrawal of his plea.

In response, the government contended that McIntyre should not be permitted to withdraw his guilty plea because he had filed his motion too late, that nothing had prevented him from seeking to withdraw his plea earlier, that he had admitted his guilt during the plea hearing, that he was relatively well educated, and that he had extensive experience with the criminal justice system. The district court denied the motion, finding that "the circumstances underlying Defendant's guilty plea, his nature and background, and his prior courtroom experience" all militated against the motion.

McIntyre's sentencing hearing was held several months later. At the hearing, after reviewing the Presentence Report (PSR) and evaluating objections from McIntyre, the court sentenced McIntyre to the statutory maximum sentence—a term of 240 months' imprisonment. The advisory Sentencing Guidelines range was 135 to 168 months. But the court varied from the Sentencing Guidelines range and imposed the statutory-maximum sentence due to McIntyre's extensive prior criminal history, including several state convictions for sex crimes involving children and evidence of hundreds of uncharged sex crimes, as well as McIntyre's own admission that he had repeatedly undergone sex-offender treatment without success.

After the sentence had been imposed and immediately before the hearing ended, McIntyre's counsel stated to the district court that "[w]e're going to execute the [plea] agreement." The court replied "[p]lease, with respect to the supervised release, as well as with respect to rights of appeal." A moment later the court also stated that it had "received the form that defendant acknowledges his

right to appeal," and McIntyre agreed.

McIntyre now appeals, arguing that the district court should have granted his motion to withdraw his plea, and that the court made several errors at McIntyre's sentencing. The government responds that the court did not abuse its discretion by denying McIntyre's motion to withdraw his plea, and that McIntyre has waived his right to appeal his sentence.

## II. ANALYSIS

### A. Standard of review

We review a district court's denial of a motion to withdraw a guilty plea under the abuse-of-discretion standard. *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007). McIntyre has the "burden to demonstrate that proper grounds exist for the granting of such a motion." *Id.* We review de novo the question of whether a defendant has waived the right to appeal his or her sentence via a valid plea agreement. *United States v. Swanberg*, 370 F.3d 622, 626 (6th Cir. 2004).

### B. McIntyre's motion to withdraw his guilty plea

McIntyre first asserts that the district court erred in denying his motion to withdraw his guilty plea. To withdraw a guilty plea before sentencing occurs, a defendant must show "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).

Similar to other circuits, the Sixth Circuit has developed a multi-factor balancing test "to guide district courts in deciding whether to grant a motion to withdraw a guilty plea." *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008). The factors we consider are the following:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it;
> (2) the presence (or absence) of a valid reason for the failure to move for withdrawal

earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Id.* (quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), superseded on other grounds by statute)). This list is nonexclusive, and no one factor controls. *Id.* Instead, "[t]he relevance of each factor will vary according to the circumstances surrounding the original entrance of the plea as well as the motion to withdraw." *Id.* (citation and internal quotation marks omitted). Furthermore, motions to withdraw a guilty plea exist "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *United States v. Ellis*, 470 F.3d 275, 280-81 (6th Cir. 2006) (citation and internal quotation marks omitted).

McIntyre alleges that all of the factors in the case are either neutral or favor his position. The government disputes this, but concedes that it would not be heavily prejudiced if McIntyre were allowed to withdraw his plea.

Contrary to McIntyre's argument, the initial factor of time weighs against him. He pled guilty on October 3, 2008 and did not file his motion to withdraw his plea until November 23, 2008—51 days later. As the government notes, this court has upheld the denial of motions to withdraw guilty pleas based on similar and, in fact, even shorter delays. *See Bashara*, 27 F.3d at 1181 (upholding the denial of a withdrawal motion that was filed six weeks after the guilty plea); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (55 days later); *United States v.*

*Spencer*, 836 F.2d 236, 239, 241 (6th Cir. 1987) (35 days later).

McIntyre responds by arguing that he had a valid reason for failing to move for withdrawal earlier, asserting that "he brought the motion to withdraw his plea to counsel at his first opportunity" because "he was confined under circumstances that prevented ready communication." But McIntyre fails to offer any evidence to support this contention. And his motion in the district court simply states that "counsel did not have contact with [McIntyre] for several weeks." The motion, however, did *not* claim that McIntyre was prevented from contacting his attorney. Thus, McIntyre offers no substantiated explanation for his delay in filing the motion.

McIntyre's failure to maintain his innocence also undermines his position. At the change-of-plea hearing, he admitted his guilt while under oath, even stating that he "absolutely" agreed with the government's evidence. A defendant's admission of guilt in a plea agreement, as in this case, combined with his stipulation to the incriminating facts set forth at his change-of-plea hearing, demonstrate that he has not maintained his innocence. *See United States v. Khouri*, 169 F. App'x 459, 463 (6th Cir. 2006) (finding that a defendant's admission of guilt in his plea agreement and his stipulation to the government's evidence "weigh[ed] heavily against the withdrawal of his guilty plea"); *United States v. Gregory*, 41 F. App'x 785, 792 (6th Cir. 2002) (noting a defendant's lack of "repeated and vigorous protestations of innocence" in denying his motion to withdraw his guilty plea (citing *United States v. Baez*, 87 F.3d 805, 809 (6th Cir. 1996)).

Furthermore, McIntyre has had extensive experience with the criminal-justice system. He has three state convictions for various sex offenses, and he pled guilty in at least one of those cases. McIntyre is also a registered sex offender. Indeed, the child pornography that led to the charges in

the present case was discovered when police executed an arrest warrant for McIntyre after he failed to report to Ohio authorities that he had started giving private lessons at a children's gymnastics facility. McIntyre's experience with the criminal-justice system therefore weighs against his motion to withdraw his guilty plea. *See Haygood*, 549 F.3d at 1052.

In addition, the district court found that McIntyre is a "manipulative person" who is relatively well educated, his record showing that he has taken a number of college correspondence courses while in prison. His nature and background are thus unsupportive of his motion. *See id.*

The lone factor that arguably supports McIntyre's effort to withdrawal his guilty plea is "the circumstances underlying the entry of the guilty plea." *See id.* As emphasized in his original motion, McIntyre did not talk to Marney, the computer forensic expert that he hired, until a few days before he agreed to plea guilty. At this point in his case, the plea deadline had passed and his trial was scheduled to begin in just a few weeks. McIntyre unquestionably possessed child pornography, but had contested whether the government could demonstrate that the pornography was linked to interstate commerce. His discussion with Marney apparently convinced him to enter a belated plea agreement with the government, which he did shortly thereafter. The relatively rapid nature of his decisionmaking after talking with Marney could thus be seen as rushed, and therefore supportive of an argument that his plea was "hastily entered." *See United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2006) (citation omitted).

On the other hand, McIntyre had "many, many, many" conversations with his counsel about the charges before his guilty plea, and he had been indicted seven months earlier. Even the superseding indictment was issued nearly two months before his change of plea. These facts show

that he had had extensive discussions with his counsel about the case and an extended period of time to consider the charges before he pled guilty. Although his decisionmaking process after his discussions with Marney may have been abbreviated, McIntyre and his counsel were the ones responsible for waiting so late to consult with a computer expert. Simply put, they could have consulted with such an expert far earlier. And nothing prevented him from moving to postpone the trial so that he would have had more time to engage in unhurried plea negotiations with the government. The government might have opposed such a motion and the district court might have denied it, but the fact that McIntyre did not even attempt to seek more time raises an inference that he did not feel unduly rushed in entering the plea agreement.

When considered as a whole, the factors set forth in *Haygood* indicate that the district court did not abuse its discretion in denying McIntyre's motion to withdraw his guilty plea. His motion was filed more than seven weeks after his change of plea, McIntyre had extensive experience with the criminal-justice system and had in fact pled guilty before, he had a reasonably high level of education, and he had significant time to understand the charges he was facing. Under these circumstances, McIntyre is unable to show that the district court abused its discretion in denying his motion. *See Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 187 (6th Cir. 2004) (holding that the district court should be reversed for abusing its discretion "only if we are firmly convinced of a mistake that affects substantial rights" (citation and internal quotation marks omitted)).

**C.      McIntyre's waiver of his right to appeal his sentence**

McIntyre next raises several issues regarding his sentence and the procedures used by the district court to determine that sentence. His plea agreement, however, specifically provides that

McIntyre "expressly waives" his right "to appeal the conviction or sentence in this case," unless he receives a sentence "in excess of the statutory maximum." And McIntyre received a sentence *at* the statutory maximum, not in excess of it. *See* 18 U.S.C. § 2252A(a)(5), (b)(2).

This waiver presumptively warrants the dismissal of McIntyre's sentencing challenges. *See United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003) ("When a defendant waives his right to appeal his sentence in a valid plea agreement, this Court is bound by that agreement and will not review the sentence except in limited circumstances." (brackets, citation, and internal quotation marks omitted)). But such a waiver has been found ineffective in situations where, for example, the district court fails to comply with the requirements of Rule 11(b)(1)(N) of the Federal Rules of Criminal Procedure, *see United States v. Almany*, 598 F.3d 238, 240-41 (6th Cir. 2010) (rejecting an appellate waiver due to the district court's failure to determine that the defendant understood what he was waiving, as required by Rule 11(b)(1)(N)), or the appellate-waiver portion of the plea agreement is ambiguous, *see United States v. Jones*, 569 F.3d 569, 572 (6th Cir. 2009) ("Plea agreements are to be interpreted strictly, with ambiguities construed against the government." (brackets, citation, and internal quotation marks omitted)).

In the present case, there is nothing ambiguous about the appellate waiver in McIntyre's plea agreement. The only relevant exception to McIntyre's waiver is that he "reserves the right to appeal: (a) any punishment in excess of the statutory maximum." Furthermore, the district court thoroughly complied with Rule 11(b)(1)(N), which "requires that the district court determine that the defendant understands the terms of the plea agreement when waiving the right to appeal." *Almany*, 598 F.3d at 240. During the plea hearing, the court specifically verified that McIntyre understood that he was

waiving his right to appeal his sentence:

> THE COURT: I've been provided a copy of the proposed plea agreement in this case, Mr. McIntyre. And it has a provision which generally waives your right to an appeal, including an appeal of my sentence with limited exceptions. Our Court of Appeals usually upholds those waivers. I want to make sure you're willing to comply with that waiver of your right of appeal. Are you?
>
> THE DEFENDANT: Let me --
>
> THE COURT: You may talk.
>
> (Discussion had off the record between the defendant and defense counsel.)
>
> THE COURT: You've had an opportunity to talk with your lawyer, and I'll go back to my question, which was if you were willing to comply with the waiver of your appeal rights as set forth [in] your plea agreement?
>
> THE DEFENDANT: Yes, sir.
>
> McIntyre's knowledge of his waiver of his appellate rights was reaffirmed later in the hearing

when the parties were reviewing the plea agreement paragraph-by paragraph:

> MR. WELDON [Assistant United States Attorney]: The bottom of page 5, paragraph 9 is the waiver of appeal paragraph. This paragraph essentially indicates that the defendant acknowledges that he's been advised of his rights to appeal only in very limited circumstances and that he will not be allowed to challenge his conviction under Title 28, 2255; and Title 18, Section 3742; however, he is reserving the right to appeal any punishment in excess of the statutory maximum.

THE COURT: And the statutory maximum in this case, Mr. McIntyre, at least with respect to Count 3, is 240 months.

> MR. WELDON: That is correct.
>
> THE COURT: You understand that?
>
> THE DEFENDANT: Yes, sir.

The record thus demonstrates that the district court made McIntyre fully aware of the waiver of his

appellate rights regarding his sentence and thus complied with Rule 11(b)(1)(N). *Cf. Almany*, 598

F.3d at 240-41 (holding that the district court's question: "[D]o you also understand that under some

circumstances you or the government may have the right to appeal any sentence that I impose?" did

not comply with Rule 11(b)(1)(N) and failed to properly notify the defendant about the waiver of his

appellate rights).

McIntyre's only argument in opposition to the enforcement of his appellate waiver is that the

district court made the following ambiguous statement about McIntyre's appellate rights at the

sentencing hearing: "I have also received the form that defendant acknowledges his right to appeal."

But viewed in context, the statement is not ambiguous because the plea agreement explains that

McIntyre retained the right to appeal his conviction based upon claims of ineffective assistance of

counsel or prosecutorial misconduct. And even if it were deemed ambiguous, the statement here

comes far short of that in *United States v. Fleming*, 239 F.3d 761, 762-63 (6th Cir. 2001), where, at

sentencing, the district court told the defendant who had waived his appellate rights that he had a

right to appeal his sentence. This court upheld the appellate waiver in *Fleming* despite this plainly

erroneous statement, as McIntyre admits. *See id.* at 764-65. The arguably ambiguous statement

made by the district court in the present case thus does not invalidate McIntyre's waiver of his right

to appeal his sentence.

Because the appellate waiver in this case is unambiguous and the district court properly

verified that McIntyre understood the waiver at his plea hearing, we will dismiss the remainder of

McIntyre's appeal. *See, e.g.*, *United States v. Thomas*, No. 08-5239, ___ F.3d ___, 2010 WL

1904908, at *10 (6th Cir. May 13, 2010) (enforcing an appellate waiver and dismissing the

-12-

defendant's appeal of his sentence).

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the denial of McIntyre's motion to withdraw his guilty plea and **DISMISS** the remainder of this appeal pursuant to the appellate-waiver provision in the plea agreement.