KAREN NELSON MOORE, Circuit Judge,
dissenting.
Federal Rule of Criminal Procedure 11 permits a defendant to withdraw a guilty plea prior to sentencing provided that the defendant has presented a “fair and just reason” for doing so. Because I believe that William Peppers has established such a reason, and that the district court abused its discretion in concluding otherwise, I must dissent.
This court reviews a district court’s denial of a motion to withdraw a guilty plea for an abuse of discretion. United States v. Dixon, 479 F.3d 431, 436 (6th Cir.2007). We have held that a district court abuses its discretion in denying a defendant the right to withdraw a guilty plea “when the district court relies on clearly erroneous findings of fact, improperly applies the law or uses an erroneous legal standard.” United States v. Ellis, 470 F.3d 275, 280 (6th Cir.2006). “This Court may also find an abuse of discretion if the district court ‘committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.’ ” Id. (quoting United States v. Schreane, 331 F.3d 548, 564 (6th Cir.2003)). In determining whether a fair and just reason exists to permit a defendant to withdraw a plea, and whether the district court abused its discretion, we review a number of nonexclusive factors, the Basham factors, which include:
“(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant’s nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.”
*192 United States v. Ward, 356 Fed.Appx. 806, 808-09 (6th Cir.2009) (quoting United States v. Bashara, 27 F.3d 1174, 1181 (6th Cir.1994), abrogated on other grounds by statute as recognized in United States v. Caseslorente, 220 F.3d 727, 734 (6th Cir.2000)); see also United States v. Hunt, 205 F.3d 931, 937 (6th Cir.2000). “Each factor’s relevance ‘varies according to the circumstances surrounding the original entrance of the plea as well as the motion to withdraw.’ ” Ward, 356 Fed.Appx. at 809 (quoting United States v. Haygood, 549 F.3d 1049, 1052 (6th Cir.2008)) (alteration omitted).
Peppers pleaded guilty in a written plea agreement to one count of carjacking a Chevrolet Impala from Issac Sawyer (Count 1) and one count of using and carrying a firearm during and in relation to a carjacking of a Chevrolet El Camino from Kevin Phillips (Count 4). Subsequently, Peppers filed a motion to withdraw the plea asserting that he failed to understand the terms of the written agreement-namely, he did not comprehend at the time of his plea that it encompassed acts from both carjackings as opposed to the entirety of the conduct associated with the carjacking of the Impala. As a result, Peppers claimed that he had erroneously pleaded guilty to conduct in Count 4 that he did not commit. Because I believe that the district court relied on a clearly erroneous factual conclusion regarding Peppers’s assertion of innocence when refusing to allow Peppers to withdraw his guilty plea as well as committed a clear error of judgment in weighing the totality of the factors that it properly considered, I would REVERSE the judgment of the district court and REMAND for further proceedings.
The first factor that this court generally considers in determining whether the district court abused its discretion in denying a defendant’s motion to withdraw a guilty plea is the delay between the entrance of the guilty plea and the motion to withdraw and, if there is a delay, whether the defendant has asserted a valid reason. Here, as the majority notes, the delay was lengthier than many delays that we have determined weighed against the defendant. Unlike the majority, however, I believe that Peppers has articulated a valid reason for the delay. Following Peppers’s guilty plea in January 2008, his attorney, Mr. Brown, left the federal-public-defenders office and was removed from Peppers’s case.[1] Peppers was not appointed substitute counsel, Ms. Jermann-Robin-son, until mid-April 2008, and apparently because of the demands of her caseload at the time, Jermann-Robinson had difficulties both meeting with her new client and becoming familiar with his case. In fact, following her appointment, Jermann-Rob-inson requested three continuances of Peppers’s sentencing hearing, and at least one was premised on the fact that Jer-mann-Robinson had yet to meet with the incarcerated Peppers. It is unclear from the record when Jermann-Robinson finally met with Peppers, but on June 18, 2008, Jermann-Robinson requested “additional time to confer” with Peppers because Peppers had given indications that he wanted to withdraw his guilty plea. Jermann-Robinson ultimately filed Peppers’s official motion to withdraw approximately one month later on July 24, 2008, stating before the district court that “any delay or *193 at least a delay since April the 15th has been on me and not on Mr. Peppers.” Dist. Ct. Dkt. Doc. (“Doc.”) 59 (Hr’g Mot. to Withdraw at 29).
Given both Brown’s departure and Jer-mann-Robinson’s inability to meet with Peppers and prepare for his case, I believe that Peppers has presented a valid excuse for not moving to withdraw his guilty plea earlier and has explained sufficiently the delay. The record plainly indicates that, through no fault of Peppers, there was a lack of communication and contact between Peppers and his shifting counsel, and the delay in filing the motion was directly attributable to the departure of one counsel and the substitution of another. See United States v. McCoy, 155 Fed.Appx. 199, 203 (6th Cir.2005) (unpublished opinion) (indicating a delay was justifiable when the defendant had expressed to his old counsel a desire to withdraw his guilty plea and “new counsel,” with whom the defendant presumably had time to consult, “filed the motion to withdraw the plea within approximately 45 days of being appointed”); cf. United States v. McIntyre, 381 Fed.Appx. 535, 539 (6th Cir.2010) (unpublished) (finding no excusable delay when the defendant failed to offer any evidence to support his conclusion that “he brought the motion to withdraw his plea to counsel at his first opportunity” because his “motion ... simply state[d] that ‘counsel did not have contact with [him] for several weeks’ ” and “did not claim that [he] was prevented from contacting his attorney.”); United States v. Bustos, 186 Fed.Appx. 551, 554-55 (6th Cir.2006) (unpublished opinion) (“[E]ven considering the substitution in appointed counsel, 54 days passed between substituted counsel’s appointment to the case and the filing of the motion of withdrawal,” and the defendant “fails to provide any explanation at all for this 54-day delay.” (internal quotation marks omitted)). As a result, this factor weighed in favor of granting Peppers’s motion to withdraw.
Two of the next factors that we consider in determining whether a district court has abused its discretion are the circumstances underlying the entry of the plea agreement and the nature and background of the defendant. To be sure, as the majority notes, there are some facts surrounding Peppers’s plea that tend to weigh in favor of the Government. For example, Peppers never objected to the factual basis for the plea as it was presented in the indictment and in open court, and he answered in the negative when the district court asked whether Peppers had any questions concerning the plea agreement. Despite these facts, however, in its analysis, the district court ignored a wealth of evidence that Peppers simply did not understand that he was pleading guilty to charges stemming from the two separate carjackings and that he did not intend to do so.
First, there is evidence that Peppers may have been pressured by Brown into pleading guilty in light of Brown’s scheduled departure from the federal-public-defenders’ office. From the initial indictment onward, Peppers had maintained continually his desire to go to trial, and he apparently agreed to plead guilty only a few days before the trial was set to commence.[2] The Government even acknowl *194 edged that it had engaged in “lengthy negotiation” with Brown on Peppers’s behalf and further conceded that it knew that it was “Mr. Peppers’[s] position that he wanted to plead just to one event, not two.” Doc. 59 (Mot. Withdraw Hr’g at 32-33). Peppers testified that prior to the hearing Brown had told him that it was in Peppers’s “best interest to say yes, yes, yes to everything that [the district court] asked,” id. at 10-11, and that he felt rushed by Brown to resolve the case and believed that Brown “did all that he could do to get [him] to sign [a] plea so that [Brown could] go ahead and move on out of town” without having to deal with Peppers further, id. at 22.
Given the facts in the instant case, it is both curious and concerning that after expressing a very clear desire to plead to solely one criminal episode throughout protracted negotiations with the Government, Peppers would have decided suddenly, on the eve of trial, to plead guilty to the two unrelated counts. And despite denying the motion to withdraw, the district court apparently agreed that Brown may have pressured Peppers into pleading guilty. Following testimony concerning Brown’s allegedly coercive behavior, Jer-mann-Robinson stated to the district court that she was “uncomfortable” with the tone that the hearing was taking with regard to Brown’s representation. Id. at 25. The district court responded without sympathy, noting that Jermann-Robinson “knew coming in [to court] that [Peppers’s] attorney misled him.” Id. at 26.
Second, in addition to evidence that Peppers fought the prospect of pleading guilty to two unrelated counts and may have pleaded only upon pressure from Brown, the circumstances under which Peppers pleaded guilty cannot be divorced from Peppers’s nature and background. According to Peppers’s testimony, he is “a slower learner” and “attended a special education class.” Id. at 20. Moreover, Peppers testified that he “never read the piece of paper” (i.e., the plea agreement) that Brown gave him to sign, id. at 11, because he “can’t hardly read,” id. at 20, and that despite asking Brown to read the document to him, Brown “never ... read [him] anything,” id. I am extremely troubled by the fact that neither counsel nor the district court thought to inquire as to whether Peppers’s alleged disability or reading difficulties may have influenced his understanding of the plea hearing, particularly in light of Peppers clear assertion it was “not that [he] didn’t pay attention” at the plea hearing; instead, he just “didn’t understand what was going on.” Id.
Thus, notwithstanding my agreement with the majority that the district court’s and Government’s statements at the plea hearing contained facts sufficient to put Peppers on notice that he was pleading guilty to two unrelated counts, if Peppers’s assertions regarding his limited comprehension skills are true — and there is no finding otherwise — then it is likely that he simply did not understand that his preference to plead to a singular episode had not prevailed during the plea negotiations, and, even assuming that he did understand what was happening given his lack of education, Peppers could have been intimidated by the formal setting such that he would not have objected. Lamentably, the *195 district court never discussed the role that Peppers’s “nature and background” played it its analysis of the Bashara factors and its decision to deny his motion,[3] and given this particular factor’s clear relevance as to the question of whether Peppers understood the plea, I believe that the district court abused its discretion in failing to inquire further and in ultimately deciding that the circumstances surrounding the entry of the plea warranted the refusal of Peppers’s request to withdraw. In sum, when the facts surrounding the plea agreement that favor the Government are viewed in light of Peppers’s background, I believe that these factors ultimately tip in Peppers’s favor on the instant record. At the very least, given the district court’s failure to address this factor, a remand for further factual findings as to Peppers’s literacy and learning disability is warranted.
An additional factor that we consider in our analysis is whether the defendant has asserted or maintained his or her innocence of the charges to which he or she pleaded guilty. In the instant case, the district court concluded that Peppers first asserted his innocence at the end of the hearing on his motion to withdraw and that such an assertion was inconsistent with Peppers’s previous statement that he was willing to plead guilty to the entirety of the criminal episode involving the Impala. The district court’s conclusion, however, is clearly erroneous. Apart from failing to object to the description of the charges, the record indicates that Peppers did, in fact, maintain from the inception of the criminal proceedings that he was innocent of the conduct contained in Count 4, which was the impetus behind his desire to withdraw his guilty plea.
In concluding that Peppers was inconsistent with regard to his innocence, the district court relied on the following exchange at the hearing to withdraw his plea:
[The court:] Is it your statement to the court that you are not guilty of the matters contained in the indictment which charges you with two carjackings and two 924(c) use of a firearm in connection with a crime of violence ... ? [Peppers:] Yes, ma’am.
Id. at 27 (emphasis added). A plain reading of the district court’s question and Peppers’s answer, however, does not indicate that Peppers’s response was in any way incompatible with his assertion that he engaged in the conduct alleged in Counts 1 and 2 (and was willing to plead guilty to those), but was not guilty of Count 4. Peppers agreed that he was “not guilty of ... two carjackings and two 924(c),” but that does not mean that Peppers was asserting that he did not engage in any of the conduct and would refuse to admit that he was guilty of one car jacking and one gun charge, as he had maintained during both pre-trial negotiations and at the hearing on the motion to withdraw his guilty plea.
Furthermore, although the Government relies on Peppers’s interview with the U.S. Probation office, as relayed in the Presen-tence Investigation Report (“PSR”), to support its claim that Peppers has not maintained consistently his innocence as to Count 4, the Government’s assertions are *196 also overstated. First, contrary to the Government’s characterization of the PSR, the PSR does not convey that Peppers confessed to the probation office that he threatened the driver of the El Camino with a gun, as charged in Count 4. The PSR instead states that “Peppers stated that as he approached Kevin Phillips’ vehicle [the El Camino], Phillips abandoned the vehicle, leaving the keys in it.” PSR ¶ 10. Peppers’s admission to the probation office regarding the theft of the El Camino clearly did not mention any weapon. Second, the Government highlights the fact that Peppers told the probation office that “the victim was a good friend” and that Peppers was “deeply sorry” for what he did, id. ¶ 14, and it argues that this statement requires the conclusion that Peppers was admitting guilt as to all of the charges. But the PSR identifies the “victim in this case” as “Issac Sawyer,” and Sawyer “was the owner and operator of the ... Impala,” which Peppers never denied stealing. Id. ¶ 12. The statement that Peppers was sorry for harming his friend in the Impala does not therefore undermine Peppers’s assertion that he was not guilty of the conduct in Count 4, involving the El Camino. Looking at the totality of the evidence in the record, I believe that Peppers has maintained his innocence as to Count 4, and it is because Peppers claims that he is not guilty of this count that he desires to withdraw his plea. The district court’s conclusion that Peppers advanced inconsistent positions at the plea hearing is therefore clearly erroneous, and this factor weighs in favoring allowing Peppers to withdraw his plea.
In short, there are two bases for vacating the judgment of the district court. First, Peppers had maintained consistently his innocence as to Count 4, and the district court’s conclusion otherwise is not supported by the record. Because we have held that a district court abuses its discretion in denying a motion to withdraw based on a “clearly erroneous finding[ ] of fact,” Ellis, 470 F.3d at 280, I would remand to the district court for further proceedings on this ground. Second, in addition to relying on a clearly erroneous fact, I believe that the district court “committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.” Id. (internal quotation marks omitted). As outlined above, any delay in moving for withdrawal was attributable to counsels’ conduct. To be sure, there were some facts surrounding the entry of the plea that weighed in favor of the Government, but those facts were counterbalanced by troubling evidence regarding potential pressure from Brown for Peppers to plead guilty as well as Peppers’s inability to understand what was occurring because of a disability and an inability to read. The district court abused its discretion by failing even to acknowledge, let alone discuss, the several troublesome facts related to Peppers’s background and nature that clearly raised red flags, and, as a result, committed a clear error in weighing the factors that it did consider. For all of the reasons outlined above, I believe that Peppers has met his burden to put forth a fair and just reason for allowing him to withdraw his guilty plea, and the district court abused its discretion in concluding otherwise.
Because I would hold that Peppers has established a fair and just reason to withdraw his guilty plea in light of the Basham factors, the final matter that I must consider is whether the Government would be prejudiced by allowing Peppers to withdraw his guilty plea. See Ellis, 470 F.3d at 285-86 (indicating that the Government is not required to establish prejudice “unless and until the defendant advances and establishes a fair and just reason” for withdrawal (internal quotation marks omitted)); United States v. Alexander, 948 F.2d 1002, 1004 (6th Cir.1991) (“The prejudice to the government need not be estab *197 lished or considered unless and until the defendant has established a fair and just reason for vacating his plea”)- Here, the Government argues that it would be prejudiced in two ways. First, it claims that witnesses’ memories will have dimmed, thereby reducing the strength of its case against Peppers, and second, it would be required to spend time and resources preparing for trial. The Government’s assertions are without merit.
“Generally, prejudice to the government has been found in cases where the entering of a guilty plea and then a subsequent motion to withdraw has made the government’s case more difficult than it would have been if the guilty plea had never been entered.” United States v. Lineback, 330 F.3d 441, 445 (6th Cir.2003) (Gilman, J., concurring). In the instant case, the Government has not alleged that physical evidence has been discarded, id. (citing United States v. Jerry, 487 F.2d 600 (3d Cir.1973)), or that its witnesses have died, id. (citing United States v. Vasquez-Velasco, 471 F.2d 294 (9th Cir.1973)). Rather, the Government has claimed simply that the witnesses’ memories will be less fresh and has asserted without any supporting evidence that they will be unable to remember the important events. It is certainly true that memories fade with time, but I do not believe that the delay has been so long that the relevant witnesses would unable to remember the salient details of these traumatic crimes such that their dimmed memories can be equated to the loss of evidence. See, e.g., United States v. Valdez, 362 F.3d 903, 913 (6th Cir.2004) (“There ... was no finding in the record that key witnesses were no longer available or that the few months’ delay had hindered their ability to remember key events.”). As to the Government’s second claim, as Peppers notes, he pleaded guilty on the eve of trial, which means that “[t]he government had already completed the discovery process, lined up witnesses[,] and was presumably prepared to go to trial.” Appellant Br. at 21. The Government cannot make a showing of prejudice by stating simply that going to trial will require a further expenditure of time and resources. If that were sufficient to establish prejudice, then no defendant would ever be able to overcome the prejudice hurdle. See Valdez, 362 F.3d at 913 (“The government always has to spend time and money trying a case, so this ‘prejudice’ is irrelevant on these facts.”). Because I believe that allowing Peppers to withdraw his plea would not cause prejudice to the Government, this factor does not overcome my belief that Peppers put forth a fair and just reason to withdraw his guilty plea and that the district court abused its discretion in denying Peppers’s motion.
In conclusion, for the reasons outlined above, I believe that Peppers has set forth a fair and just reason to withdraw his guilty plea and that the district court abused its discretion in determining otherwise. I would REVERSE the judgment of the district court.

. The record does not indicate precisely when Brown left and whether Brown was properly communicating with Peppers up until his departure. Brown apparently did file a position paper relating to the PSR on Peppers’s behalf on April 3, 2008, but Peppers asserts in his pro se filings that following the negotiation of the plea agreement he had been abandoned by Brown.

. In fact, there is record evidence indicating that Peppers was unaware of the purpose of the change of plea hearing prior to its commencement and that he believed when he arrived at the courthouse that he was there for trial. The district court never made a finding as to whether Peppers agreed to plead guilty before arriving in court, however, because Peppers conceded that at some point during the proceeding he became aware that it was a plea hearing. When the district court asked Peppers why he continued to plead *194 guilty if he had intended to go to trial, Peppers responded:
I [thought that] I was going to court, but also I wanted to fire Pat Brown, too. And as I stepped in this courtroom, and I seen you, it looked like to me you was like sitting up there like a god and angel ... my mouth would not open at all, it would not come out of my mouth to say I wanted to fire Pat Brown.
Doc. 59 (Mot. Withdraw Hr’g at 17-18).

. To the extent that Peppers’s background can be grouped with the factor focusing on his experience in the criminal-justice system, the district court did determine that Peppers’s experience undermined his claim that he was confused at the hearing. Certainly, Peppers does have a lengthy criminal history, and he has pleaded guilty on previous occasions. But as Peppers notes in his brief, many of the crimes to which he pleaded guilty were fairly simple criminal charges — the majority of which related in some manner to driving infractions.